**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONTGOMERY COUNTY, MARYLAND; | ) | Case No. 8:26-cv-03025 |
| MONTGOMERY COUNTY, MARYLAND | ) | |
| POLICE DEPARTMENT; MONTGOMERY | ) | |
| COUNTY, MARYLAND SHERIFF'S OFFICE; | ) | |
| and MAXWELL C. UY, in his official capacity as | ) | |
| Sheriff of Montgomery County, Maryland, | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY INJUNCTION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction is

GRANTED.

**I.      Standard for Injunctive Relief under Fed. R. Civ. P. 65.**

A party seeking a preliminary injunction must show that: (1) it is likely to succeed on the

merits, (2) there is a risk of irreparable harm absent injunctive relief, (3) the balance of equities

tips in its favor, and  (4) the broader public interest in an injunction.  *Di Biase v. SPX Corp.*, 872

F.3d 224, 230 (4th Cir. 2017).  When the government is the defendant, the third and fourth factors

merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**II.      The United States Is Likely to Prevail on the Merits.**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court set forth

the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows:
> When the Second Amendment's plain text covers an individual's conduct, the
> Constitution presumptively protects that conduct.  The government must then

justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

In *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), the Court clarified the *Bruen* test's first step:

[The analysis required in a Second Amendment case] involves two steps. First, a court must determine whether the law before it clashes with the plain text of the Amendment's language. This inquiry entails three subsidiary questions. First, does the law apply to the people—which is to say, to all members of the political community? Second, does it concern any form of Arms, i.e., any weapon customarily used for offensive or defensive purposes? Third, does the law place any restrictions on either the keeping (i.e., possession) or the bearing (i.e., carrying) of arms?

If a challenged law falls within the plain text of the Second Amendment, *it is presumptively unconstitutional*—which means that it may violate the preexisting right that the Amendment codified. But because that right was not in every way coterminous with the Amendment's literal language, further analysis may be needed. Specifically, the relevant government—federal, state, or local may be able to show that its challenged law did not infringe the historical understanding of the codified right.

146 S. Ct. at 2043 (cleaned up; citations and quotation marks omitted; emphasis added).

Thus, step one of the *Bruen* test requires a court to ask three questions:

A.  Does the law apply to the people?

B.  Does it concern any form of arms?

C.  Does the law place any restrictions on either the possession or carrying of arms?

In this case, step one of the *Bruen* test is easily met. No one can reasonably dispute that: (1) the individuals subject to the burdens of Bill 23-26 are among the "people;" (2) Bill 23-26 applies to arms; and (3) Bill 23-26 restricts the possession or carrying of arms.

Bill 23-26's restrictions on where arms may be possessed and carried thus limit rights protected by the Second Amendment. In *Kipke*, the court stated that "[w]hen analyzing the sensitive places doctrine and determining where it fits within the *Bruen* framework . . . we hold

2

that this doctrine goes to the 'proposed course of conduct,' namely, the carrying of guns in public, which the Second Amendment protects." 165 F.4th at 207. At *Bruen* step one, the text of the Second Amendment applies to the proposed conduct (i.e. carrying firearms in public). Therefore, under *Wolford*, Bill 23-26 is presumptively unconstitutional.

The Court next turns to *Bruen* step two and holds that *Wolford* is dispositive. Bill 23-26's prohibition on possession of firearms combined makes vast swathes of Montgomery County into a patchwork of areas where possession of firearms repeatedly and unpredictably switches back and forth between legal and illegal. As a practical matter, the enormous scope and unpredictable nature of Bill 23-26's prohibitions make it almost impossible for a law-abiding firearms permit holder to complete many of the common activities in our daily lives that we take for granted without likely running afoul of the bill's provisions multiple times each day. Thus, Montgomery County's law suffers the same defect as Hawaii's law in *Wolford*; indeed, Bill 23-26 actually is much more restrictive than the offending law in *Wolford*. In Hawaii, a citizen could hope to get a property owner's permission to carry. Not so in Montgomery County. The law makes no exception for situations in which a person obtains a property owner's express permission to carry on their property. In other words, the owners of churches, recreational facilities, etc. are not allowed to grant their visitors permission to carry a firearm on their property even if they want to. Bill 23-26 is contrary to the Court's holding in *Wolford*.

Montgomery County is a governmental authority, as that term is used in 34 U.S.C. § 12601(a). When Montgomery County's law enforcement officers enforce the Bill 23-26, they are acting as agents of and on behalf of Montgomery County. This pattern or practice of conduct by law enforcement officers deprives persons of rights, privileges, or immunities secured or

protected by the Constitution. Therefore, Defendants are in violation of 34 U.S.C. § 12601(a). The United States is authorized to bring this action pursuant to 34 U.S.C. § 12601(b).

**III.    The United States Meets the Irreparable Harm Factor.**

The Fourteenth Amendment empowers the United States to enforce constitutional rights against the States, *see* U.S. Const. Amend. XIV, § 5, and a loss of constitutional rights amounts to irreparable injury, *see Centro Tepeyac v. Montgomery Cnty*., 722 F.3d 184, 190 (4th Cir. 2013). Accordingly, "[w]hen an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 1998). The deprivation of Second Amendment rights *per se* causes irreparable injury. *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). The United States also suffers harm in Defendants' unlawful violation of a federal statute, Section 12601. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-431 (1976). Moreover, the harms that Bill 23-26 imposes on the people of Montgomery County are not academic or theoretical. The law imposes severe hardships on real people.

**IV.    The United States Prevails on the Final Two Factors.**

The remaining factors decisively tip in Plaintiff's favor. The balance of equities favors the Plaintiff because Montgomery County is not likely to be harmed when enforcement of an unconstitutional law is enjoined. *See Centro Tepeyac*, 722 F.3d at 191. "[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001). Montgomery County's statute harms a constitutional right, and it suffers no harm, so the balance of equities tip in the Plaintiff's

favor from enjoining the bill's enforcement.  "[U]pholding constitutional rights surely serves the public interest."  *Centro Tepeyac*., 722 F.3d at 191 (*quoting Giovani Carandola, Ltd. V. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)).  "[T]here is no valid state interest in enforcing unconstitutional laws."  *Brown v. Yost*, 133 F.4th 725, 738 (6th Cir. 2025).  Therefore, the public interest also leans sharply into Plaintiff's favor.

**ORDER**

TO DEFENDANTS MONTGOMERY COUNTY, MARYLAND, MONTGOMERY COUNTY, MARYLAND POLICE DEPARTMENT, MONTGOMERY COUNTY, MARYLAND SHERIFF'S OFFICE, and MAXWELL C. UY:

PENDING further order of the Court, you and all persons under your direction and control and all those in active concert or participation with you ARE HEREBY RESTRAINED AND ENJOINED from enforcing Bill 23-26.

This Order is effective immediately.  Plaintiff is the United States. Therefore, security is not required. Fed. R. Civ. P. 65(c).

DONE AND ORDERED on this, the ___day of August, 2026.

BY THE COURT:

_____
United States District Court Judge