**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 8:26-cv-03025-TDC |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, MARYLAND, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The Montgomery County, Maryland Police Department Must Be Dismissed With Prejudice. ........ 1

B. The United States Lacks Article III Standing To Bring This Lawsuit Because It Fails To Allege A Concrete Injury. ........ 2

C. The United States Otherwise Lacks Authority To Sue Defendants Under Section 12601. 4

1. The United States missates the plain language of Section 12601. ........ 4

2. The United States misapplies the canon of inpari materia. ........ 5

3. The statute's history confirms the limited scope of Section 12601. ........ 6

4. Neither case law nor the Department's past practice supports the United States' use of Section 12601 as a vehicle facially to challenge a local government's law. ........ 9

D. The United States Fails Plausibly To Allege A Claim Under Section 12601. ........ 11

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 12

*Austin v. University of Oregon*, 925 F.3d 1133 (9th Cir. 2019) ... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... 11

*California v. Texas*, 593 U.S. 659 (2021) ... 2

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ... 7, 8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ... 3

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) ... 9

*Erlenbaugh v. United States*, 409 U.S. 239 (1972) ... 5

*Fischer v. United States*, 603 U.S. 480 (2024) ... 7

*Hudspeth v. Figgens*, 584 F.2d 1345 (4th Cir. 1978) ... 15

*Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026) ... 11

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ... 11

*Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73 (4th Cir. 1991) ... 3

*Raines v. Byrd*, 521 U.S. 811 (1997) ... 2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ... 2, 3

*Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000) ... 15

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ... 2, 3

*United States EEOC v. Cath. Healthcare W.*, 530 F. Supp. 2d 1096 (C.D. Cal. 2008) ... 14

*United States v. Bd. of Educ. for Sch. Dist. of Philadelphia*, 911 F.2d 882 (3d Cir. 1990) ... 14

*United States v. Broncheau*, 645 F.3d 676 (4th Cir. 2011) ... 5

*United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980) ... 7

*United States v. County of Maricopa Arizona*, 889 F.3d 648 (9th Cir. 2018) ... 1, 9

*United States v. County of Maricopa*, No. 12-cv-981 (D. Ariz. May 10, 2012) ... 10

*United States v. Nobel Learning Communities, Inc.*, 676 F. Supp. 2d 379 (E.D. Pa. 2009) .. 13, 14

*United States v. Prashad*, 437 F. Supp. 3d 105 (D. Mass. 2020) ................................................ 13

*United States v. The City of Ferguson*, No. 4:16-cv-00180 (E.D. Mo. Feb. 10, 2016) ................ 10

*United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019) ...................................... 10

*Utility Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014)......................................................................... 11

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) ............................................................ 12

*Vt. Agency of Nat. Res. v. United States ex re. Stevens*, 529 U.S. 765 (2000)........................... 3, 4

*Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017)....................................................... 11

**Statutes**

34 U.S.C. § 12601 .............................................................................................................. 4, 5, 13

42 U.S.C. § 1983 ........................................................................................................................ 6

# I. INTRODUCTION

With dramatic and hyperbolic rhetoric, the United States would have this Court ignore not only centuries of jurisprudence regarding state and local sovereignty, but would further have this Court ignore the very language of the statute it purports to enforce here. It asks this Court to flip the purpose of the statute from one designed to provide protection against rogue local law enforcement actors engaging in patterns and practices of misconduct, and instead to have the statute serve as a bludgeon to permit the federal government to direct and oversee local law enforcement generally and pre-emptively. This position finds no support in the law itself or the relevant case law and history that surrounds it.

# II. ARGUMENT

## A. The Montgomery County, Maryland Police Department Must Be Dismissed With Prejudice.

The MCPD and the Sheriff presented well-settled Maryland law—articulated in Maryland State Courts, this Court, and the Fourth Circuit—that the police and sheriff's offices are not legal entities capable of being sued. Motion at 15-16. The United States did not respond at all to that argument, let alone cite to *any* authority that possibly can support the United States suing them here. Indeed, the Court in *United States v. County of Maricopa Arizona*, upon which the United States heavily relies in its Opposition (*see, e.g.,* Opp. at 13, 14, and 18), recognizes the widely-accepted notion that county law enforcement offices are "non-jural entit[ies] that cannot be sued in [their] own name." 889 F.3d 648, 650 (9th Cir. 2018). Apparently conceding the point at least to some extent, the United States voluntarily dismissed the Montgomery County Sheriff's Office (but not the MCPD), though it did so without prejudice. *See* ECF 23 and 27 (the United States recognizing that the Sheriff's Office "is not a legal entity subject to suit"). The authorities cited

in the Motion are sound and dispositive. MCPD and the Montgomery County, Maryland Sheriff's Office should be dismissed, with prejudice, at this juncture.

### B. The United States Lacks Article III Standing To Bring This Lawsuit Because It Fails To Allege A Concrete Injury.

The power of a federal court to adjudicate "genuine 'Cases' and 'Controversies'" is limited by the "requirement that litigants have standing." *California v. Texas*, 593 U.S. 659, 668 (2021). Standing is a "'bedrock requirement.' … 'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

The United States suggests that this Court's Article III inquiry is satisfied simply because "the United States alleges Defendants have violated a federal statute, *viz*., Section 12601." Opp. at 2. That is not enough for standing. On multiple occasions, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). The United States' mere citation of a federal statute does not answer the Article III standing inquiry, because "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 427 (italics in original). Here, the very opposite is true.

Despite its burden to demonstrate standing, the United States fails to plead any concrete harm, let alone a "particular" one. *TransUnion*, 594 U.S. at 429, n. 2 (affirming that

particularization of harm is a separate requirement that must be demonstrated). The United States does not identify any purported harm that is "'real,' and not "abstract.'" *Spokeo*, 578 U.S. at 340. Instead, it misplaces reliance on *Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73 (4th Cir. 1991), to suggest that an assumption that harm—enforcement—*may* occur somehow suffices. Opp. at 2-3.

The United States' position is as disingenuous as it is flawed. The position is based on a case, *Mobil Oil*, that permits pre-enforcement standing by a private individual challenging the constitutionality of a statute (940 F.2d at 74, 76), yet the United States insists that it is "not mounting a facial challenge to Bill 23-26E." Opp. at 9. The United States cannot have it both ways. Either the United States *is* mounting a facial challenge to Bill 23-26E such that it conceivably may rely upon standing principles applicable to private individuals who may be threatened with enforcement of an allegedly unconstitutional law, or it is not. In any event, "'threatened injury must be *certainly impending* to constitute injury in fact,' and [ ] '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (italics in original).

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), cited in the Opposition at page 2, does not help the United States here. The federal law that allegedly was violated in *Stevens* was the False Claims Act, which imposes civil liability upon presentation of a "false or fraudulent claim for payment or approval" to the United States Government. 529 U.S. at 768-69. The Supreme Court ruled in *Stevens* that a plaintiff asserting a qui tam action on behalf of the United States adequately alleged an injury for Article III standing purposes where the United States was induced into "disburs[ing] more grant money than petitioner was entitled to receive" and

therefore suffered an injury. *Id.* at 770. In other words, the United States alleged direct injury. No such injury is alleged here, nor could it be.

### C. **The United States Otherwise Lacks Authority To Sue Defendants Under Section 12601.**

1. *The United States misstates the plain language of Section 12601.*

The United States' argument that "[t]he plain text of [Section 12601] manifestly prohibits *all* law enforcement conduct that deprives people of their constitutional rights" (Opp. at 12) seemingly intentionally omits the statute's fundamental and express textual prerequisite: the alleged deprivation of rights must be caused by "a pattern or practice of conduct by law enforcement officers." 34 U.S.C. § 12601. This means that the deprivation of persons' rights must arise from conduct by a law enforcement officer that is part of a "pattern or practice," and the conduct itself must be what violates rights. The United States' bald assertion that Section 12601 authorizes it to seek to remedy "all" constitutional violations involving law enforcement officers flies in the face of these textual limitations.

Defendants do not, as the United States suggests, "contend that enforcement of an unconstitutional law is not conduct within the meaning of Section 12601." Opp. at 12. Defendants made no argument about any limit to the "rights, privileges, or immunities" that may be the subject of a proper Section 12601 claim. Instead, Defendants argued in their Motion that Section 12601 cannot be used to mount a facial attack on a local law where *no* "conduct"—let alone a pattern and practice of conduct—of law enforcement officers is at issue. The United States does not—because it cannot—proffer any express statutory language that would remove the "pattern or practice of conduct by law enforcement officers" as the necessary predicate for its authority to sue under Section 12601. Its blatant distortion of the plain text of Section 12601 must be rejected.

2. *The United States misapplies the canon of in pari materia.*

This Court should decline the United States' invitation to read Section 12601 "consonantly with" 42 U.S.C. § 1983. Opp. at 14. "The rule of *in pari materia*—like any canon of statutory construction—is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context. … The rule is but a logical extension of the principle that individual sections of a single statute should be construed together, for it necessarily assumes that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." *Erlenbaugh v. United States*, 409 U.S. 239, 245, 243-44 (1972). Its use "makes the most sense" when comparing statutes that "were enacted by the same legislative body at the same time." *Id*. at 244.

Importantly here, the Fourth Circuit cautions the use of the canon, prescribing its use "only 'where the meaning of a statute is ambiguous or doubtful.'" *United States v. Broncheau*, 645 F.3d 676, 685 (4th Cir. 2011). The United States, however, does not even attempt to identify any ambiguity or doubt in the meaning of Section 12601's plain text—especially the one phrase that Section 12601 and Section 1983 have in common. It therefore cannot invoke *in pari materia* at all. *See id.* (rejecting use of *in pari materia* where no ambiguity identified).

Moreover, "the principle of *in pari materia* has no force where two statutes 'superficially relat[e] to similar subjects,' but 'a finer examination reveal[s] that the purposes underlying the laws var[y].'" *Broncheau*, 645 F.3d at 685. Far from being "sister statutes" (Opp. at 13) (being enacted over 100 years apart), the statutes share only one common phrase: they both provide a cause of action to redress the deprivation of "rights, privileges, or immunities secured [or protected] by the Constitution [and/or] laws" of the United States. *Compare* Section 12601(a) *with*

42 U.S.C. § 1983.[1] That one similarity—especially where there is no ambiguity or other doubt as to that particular language—does not somehow empower the United States to turn Section 12601 into a blanket authorization to impose itself upon any and every case where Section 1983 would provide an individual with a cause of action. This is especially the case here where the limitations at issue—a "pattern or practice of conduct by law enforcement officers—do not appear in Section 1983. Instead, Section 1983 applies liability to "[e]very person who" subjects another to any deprivation of rights, with no "pattern or practice" *or* conduct of law enforcement officials required. Thus, even if the *in pari materia* canon were to apply, it does not give the United States carte blanche to match one common phrase and then grossly—and dangerously—expand Section 12601's scope and application.

3. *The statute's history confirms the limited scope of Section 12601.*

If Congress had wanted to disregard centuries of precedent on state and local sovereignty and purport to enact Section 12601 to serve as "an extremely broad remedy for the United States to redress violations of *any* constitutional right similar to the already extant broad remedy available to private litigants under Section 1983" (Opp. at 15), it could and would have done so, with the *same* language used in Section 1983. It did not. Nor is there any mention in the legislative history of any intent to grant such a broad authority to challenge the mere existence of *any* state law, without the further element of law enforcement conduct. The legislative history is clear, however,

[1] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress … .

that Congress enacted Section 12601 to address systemic "police brutality" and "police misconduct" by closing a "gap in the law" that provided no vehicle for either private parties or the United States to remedy such conduct. H.R. Rep. No. 102-242 at 135-139 (explaining statute's purpose). It would be "peculiar" to conclude that in "closing" the "gap" that limited remedies for police misconduct, "Congress actually hid away" a cause of action "that reaches far beyond the … scenarios that prompted the legislation in the first place." *Fischer v. United States*, 603 U.S. 480, 492 (2024).

The United States manipulates the relationship between *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980), and Section 12601 to suggest a much broader scope than the text of the statute permits. Opp. at 16. In that case, the Third Circuit rejected the United States' argument that it had "implied authority" to seek an injunction against systemic, rights-depriving conduct by Philadelphia police officers under either "the criminal provisions of the Civil Rights Act," 18 U.S.C. §§ 241–242, or "the fourteenth amendment itself." 644 F.2d at 189–90. In other words, *City of Philadelphia* made clear that, absent an *explicit, statutory* grant of such authority, the United States lacked it. The Committee Report on the 1991 Act that preceded Section 12601 confirms that Congress enacted Section 12601 to confer that explicit statutory authority, that is, to enjoin "*a pattern or practice* of depriving persons of [constitutional] rights" through *law enforcement misconduct*. *City of Philadelphia*, 644 F.2d at 189–90; *see* H.R. Rep. 102-242, at 137.

The challenges that private individuals faced in obtaining injunctions against systemic police misconduct under *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) provided further context to the enactment of Section 12601. In *Lyons*, the Supreme Court held that, to seek an injunction against systemic police misconduct, a plaintiff must establish the high bar of a personal

likelihood to experience such misconduct in the future. *Id.* at 106. Nothwithstanding the *Lyons* plaintiff's personal experience of an unconstitutional chokehold by police, along with at least 975 additional chokehold incidents resulting in 16 deaths (*id.* at 115–17 (Marshall, J., dissenting)), the Supreme Court considered it "no more than speculation" that Lyons would experience an unconstitutional chokehold in the future. Thus, the Court held that he lacked standing to pursue an injunction. *Id.* at 108 (majority op.).

Section 12601 reflects Congress's intention to close the "gap" that existed from the combination of the limitations on the ability of private plaintiffs to obtain injunctions against systemic police misconduct imposed by *Lyons* and the limitations on the United States' authority recognized in *City of Philadelphia*. *See* H.R. Rep. 102-242, at 137 (discussing both *Lyons* and *City of Philadelphia* in describing the "gap" it intended to remedy by "authorizing the Attorney General … to sue for injunctive relief against abusive police practices"). Nothing in this history, however, gives the United States dangerously unfettered "broad and robust authority" (Opp. at 16) to address what it may deem to be any violations of any law whatsoever.

Nor can the United States glean some overbroad grant of authority from the Committee Report's statement that "The standards of conduct under the Act *are the same as those under the Constitution*, presently enforced in damage actions under section 1983." Opp. at 15 (citing H.R. Rep. No. 102-242, at 138). The United States omits the *preceding* sentence where the Committee Report gives context to that statement, that "The Act does not increase the responsibilities of police departments or impose any new standards of conduct on police officers." H.R. Rep. No. 102-242, at 138. Therefore, the Committee Report merely states that the Act would not impose standards beyond those already required under the Constitution. That single comment does not permit broad

expansion of the statute beyond its textual scope.[2]

4. *Neither case law nor the Department's past practice supports the United States' use of Section 12601 as a vehicle facially to challenge a local government's law.*

As applied to the allegations in *this* case, whether "law enforcement officers enforcing an unconstitutional law" is conduct that may suffice as a "pattern or practice of conduct by law enforcement officers … that deprives persons" of Constitutional rights is an academic debate. The United States does not allege enforcement. It simply alleges that County law 23-26E is unconstitutional and that Montgomery County law enforcement officers may, at some unspecified time in the future, enforce it against unspecified individuals engaging in unspecified alleged violations.

Far from supporting the availability of Section 12601 as a claim in this case, the cases that the United States cites (Opp. at 17-18) highlight why Section 12601 has no application here. In direct contrast to what the United States alleges in the Complaint, these cases present quintessential law enforcement misconduct. Not one of the cited cases relies upon the *mere existence* of an allegedly unconstitutional law to supply the "conduct by law enforcement officers."

- In *United States v. Cnty. of Maricopa*, the constitutional violation was based on the officers' *conduct* in "routinely target[ing] Latino drivers and passengers for pretextual traffic stops aimed at detecting violations of federal immigration law." 889 F.3d at 649. The "official policy" at issue related to fostering that conduct, alleging that the county "created and fostered institutional

---

[2] Plaintiff argues that Section 12601 should be construed broadly because it is a remedial statute. Opp. at 17. Even if its remedial nature is undisputed as the United States posits, the notion that "remedial statutes should be interpreted in a liberal manner" is not a permissible "substitute for a conclusion grounded in the statute's text and structure." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014), superseded by statute on other grounds. "'No legislation pursues its purposes at all costs.'" *Id*. (citation omitted).

bias against Latinos … encourage[ing] the unlawful treatment." *United States v. County of Maricopa*, No. 12-cv-981 (D. Ariz. May 10, 2012).

- *United States v. Town of Colorado City* also addresses systemic police misconduct, this time in the form of the police department taking direction from leadership, "'selectively enforc[ing] the law based upon religion'" and "arrest[ing] several residents who were not [Fundamentalist Church of Jesus Christ Latter-Day Saints (FLDS)] members without probable cause." 935 F.3d 804, 807 (9th Cir. 2019).

- In *United States v. The City of Ferguson*, the United States alleged "a pattern or practice of conduct by law enforcement officers that deprives persons of their rights under the First, Fourth, and Fourteenth Amendments." No. 4:16-cv-00180 (E.D. Mo. Feb. 10, 2016), ECF No. 1. ¶ 188. Specifically, it alleged that the defendants unreasonably stopped, searched, detained, cited and arrested people; used objectively unreasonable force; infringed upon free expression; intentionally prosecuted and resolved municipal violations in a manner that violates due process and equal protection; and intentionally engaged in racially discriminatory law enforcement conduct against African-American persons. *Id.* ¶¶ 184–88.

None of these cases rest on the allegation of an unconstitutional law that law enforcement presumably will enforce in the future.[3] They instead turn on allegations and proof of actual conduct by law enforcement—which is what the text of Section 12601 targets. The stark contrast between those cases and this case is laid bare by a comparison of the Complaint's proportional focus on the alleged facial and "presumptive[ ]" unconstitutionality (Complaint at 5) of Bill 23-

[3] Both the State's Attorney and Montgomery County have indicated an intention not to engage in criminal citations or prosecutions for alleged violations of County Bill 23-26E pending resolution of the constitutionality of that legislation in this Court. *See Silver Spring Jewish Center, Inc., et al. v. Montgomery County, Maryland, et al.*, Case No. 8:26-cv-02963-DKC, ECF No. 25 and ECF No. 32.

26E—occupying 33 paragraphs, with the passing reference to alleged enforcement—occupying one paragraph (¶ 48). This case is simply nothing like the law enforcement that was at issue in the cases upon which United States misplaces reliance.[4]

Only late last year, the United States began its "revolutionary" campaign to attack local laws that were deemed insufficiently adherent to the Justice Department's point of view. Motion at 12-13. The United States responds that its "past practice does not cabin the scope of the statute." Opp. at 18. That is incorrect because the fact that the United States never before claimed that Section 12601 authorizes the suit it now brings is strong evidence that the authorization does not exist. *See Learning Res., Inc. v. Trump*, 607 U.S. 229, 250 (2026) ("[T]he fact that no President has ever found such power" in Section 12601 in the three decades since it was enacted "is strong evidence that it does not exist."); *see also Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power … we typically greet its announcement with a measure of skepticism."). Even if not binding, the United States never before exercising the authority that it now purports to have, is informative. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is.").

**D. <u>The United States Fails Plausibly To Allege A Claim Under Section 12601.</u>**

The United States cannot survive Defendants' Motion because it has failed to identify sufficient "*factual* matter" pleaded in the Complaint which, taken as true, would suggest "a cognizable cause of action." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (emphasis added). The plausibility

[4] The United States seemingly would have this Court blindly accept its self-serving review of the unidentified cases that it claims address Section 12601. *See* Opp. at 18, n. 9.

standard—which the United States repeatedly parrots in its Opposition—indeed requires a plaintiff to plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cited in Opposition at 4-5). The Supreme Court, however, is clear that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' … Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citations omitted). Under this standard, the United States fails to state a claim.

The United States does not and cannot cite to a single *fact* supporting its conclusory allegation that any of Defendants "are engaging in a pattern or practice of conduct by law enforcement officers." Compl. ¶ 49. Instead, the United States seemingly intentionally obfuscates what it is required to plead, by compartmentalizing the Statute's phrases—thereby disassociating each phrase from the statute as a whole—and plucking concepts from various inapposite cases to suggest that it meets each "element" in a vacuum.

To begin, the Opposition confirms that the United States' *entire* theory of liability rests on the notion that "[i]t is appropriate, then, to presume the Bill's enforcement" because Defendants have not "disavow[ed] enforcement" of Bill 23-26E. Opp. at 10.[5] Indeed, all that it alleges in the Complaint is that Montgomery County law enforcement officers have the responsibility to enforce Montgomery County laws. Compl. ¶¶ 44-46. *See also* Compl. ¶ 48 (alleging the Montgomery County law enforcement officers "have an affirmative duty to use their best efforts to enforce the [allegedly] Unlawful Prohibitions."). But here, Section 12601 expressly requires more; it requires

---

[5] *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988), cited by the United States for this proposition (Opp. at 10), is inapposite. That case does not address Section 12601 at all, but rather discusses whether a private plaintiff satisfactorily alleged standing to mount a facial challenge to the constitutionality of a Virgina statute under 42 U.S.C. § 1983. *Id*. at 388-93.

that the Montgomery County law enforcement officers "engage[d] in a pattern or practice of conduct … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601.

As stated in the Motion, Section 12601 carries with it standard procedures for addressing police misconduct, such as preliminary inquiries into policing practices, a formal investigation, and detailed findings. Motion at 11-12. Notably here, and despite the long history and established practice of investigating alleged violations of Section 12601, the United States does not allege that any such investigation was done prior to filing the Complaint. Instead, the United States filed its Complaint with no investigation of any kind, and with no factual support, and lacking any examples of enforcement—representative or otherwise—of County Bill 23-26E.

The United States attempts to minimize its pleading burden by suggesting that it must "only create a reasonable inference that a pattern or practice exists." Opp. at 5. That proposition is wholly unsupported by the cases that the United States cites, none of which address Section 12601 and the requirement for a "pattern or practice of conduct." More importantly, those cases confirm that the United States must plead *facts* and cannot rest on conclusory allegations to allege any kind of pattern or practice. For example, in *United States v. Prashad*, to allege a pattern or practice of discrimination under the Fair Housing Act, the complaint at issue "identifie[d] seven categories of discriminatory behavior and detail[ed] specific incidents of harassment experienced by three female tenants," as well as "severe or pervasive and unwelcome sexual harassment" including "four categories of discriminatory behavior" and "specific incidents of harassment experienced by two female tenants and one female guest of a tenant." 437 F. Supp. 3d 105, 108 (D. Mass. 2020). In *United States v. Nobel Learning Communities, Inc.*, to allege a pattern or practice of discrimination under the Americans with Disabilities Act, the complaint at issue "identifie[d]

eleven children who were either disenrolled or denied enrollment from the defendant's preschools." 676 F. Supp. 2d 379, 384 (E.D. Pa. 2009). While the Court accepted those facts partially to state a pattern or practice claim, the Court dismissed another claim of discrimination at the day care or secondary level because there was a "lack of any facts alleging discrimination" such that the complaint "fail[ed] to create a reasonable inference of a discriminatory policy at these levels of schooling." *Id*. at 385. Finally, *Austin v. University of Oregon*, 925 F.3d 1133 (9th Cir. 2019), another case that has nothing to do with Section 12601, stands for the opposite of what the United States cites it for. *See* Opp. at 5 (citing *Austin* for the proposition that "a plaintiff does not need to state acts to establish a *prima facie* case of a pattern or practice"). That case confirms that "sufficient, nonconclusory allegations" are required; "[j]ust saying so is not enough." *Austin*, 925 F.3d at 1138. Here, the United States 'just says so'.

Nor can the United States salvage its claim by suggesting that "an openly declared policy to enforce unconstitutional laws amounts to a 'pattern or practice.'" Opp. at 6. The United States isolates that phrase and borrows its interpretation from civil rights enforcement statutes, where the United States posits that "'pattern or practice' can be established by pointing to *either* defendants' actions *or* defendants' openly stated policy, including enactment of an unlawful statute." Opp. at 6 (citing *United States v. Bd. of Educ. for Sch. Dist. of Philadelphia*, 911 F.2d 882, 892 (3d Cir. 1990)). Critically, however, the "pattern and practice" of Title VII at issue in *Bd. of Educ.* does not require a pattern and practice of "conduct by law enforcement officers." *See* 911 F.2d at 892 (stating authority for the Attorney General to seek injunction whenever "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter"). *See also United States EEOC v. Cath. Healthcare W.*, 530 F. Supp. 2d 1096, 1101-04 (C.D. Cal. 2008) (addressing pattern and practice in context of Title VII, which

does not require conduct by law enforcement officers). The United States' reliance on those cases demonstrates exactly what the Motion states: "It is the terms of Bill 23-26E itself—not any particular pattern or practice of enforcement by any particular law enforcement officers, actual or hypothetical—that the Justice Department claims is depriving individuals of a constitutional right." Motion at 1. This is a thinly—if at all—disguised facial challenge to Bill 23-26E, which Section 12601 does not give the United States any authority to mount.

Similarly, the United States' argument is disingenuous that "law enforcement's threat of prosecution for merely exercising a constitutional right" (Opp. at 8) somehow is sufficient to state a claim under 12601. Like the rest of the cases that the United States cites, neither *Hudspeth v. Figgens*, 584 F.2d 1345 (4th Cir. 1978) nor *Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000) has anything to do with Section 12601 or its elements. These cases suggest the limited propositions that a threat of physical harm may suffice as an imposition on a prisoner's constitutional right to meaningful access to the courts (*Hudspeth*, 584 F.2d at 1348) or that a threat of disclosure of sexual orientation may suffice as an imposition of a constitutional right to privacy (*Sterling*, 232 F.3d at 196). Neither case, however, stands as authority for the incorrect notion that a threat of conduct may suffice as conduct—a required element of Section 12601.

## III. <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in the Motion, this Court should dismiss the Complaint, in its entirety, with prejudice.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

By: /s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar ID #06095)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)
Deanna L. Peters (Bar ID #15674)
dpeters@steinsperling.com
(301) 354-8131 (facsimile)
Ritozeh A. Saingbe (Bar ID #32444)
rsaingbe@steinsperling.com
(301) 354-8309 (facsimile)
STEIN SPERLING BENNETT
DE JONG DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

/s/ Erin J. Ashbarry
Erin J. Ashbarry (Bar ID #26298)
Chief, Division of Government Operations
erin.ashbarry@montgomerycountymd.gov
Office of the County Attorney
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850
(240) 777-6700
(240) 777-6705 (facsimile)

*Attorneys for Defendants, Montgomery County, Maryland, and Montgomery County, Maryland Police Department*

and

ANTHONY G. BROWN
ATTORNEY GENERAL OF MARYLAND

/s/ Emily Green Hull
Emily Green Hull (Bar ID #31074)
egreenhull@oag.maryland.gov
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7010
(410) 576-6955 (facsimile)

*Attorneys for Defendant Sheriff Maxwell C. Uy*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of September, 2026, a copy of the foregoing was sent to all counsel of record via CM/ECF.

/s/ Jeff M. Schwaber
Jeffrey M. Schwaber (Bar ID #06095)